## DERBY v. HAYES.

AUTOMOBILES—MOTORCYCLES—INTERSECTIONS—CONTRIBUTORY NEG-
LIGENCE AS MATTER OF LAW.

> Plaintiff motorcyclist eastbound on cinder-covered street who collided with defendant's northbound truck on pavement *held,* guilty of contributory negligence as a matter of law in failing to make and continue periodic observations of the location and speed of defendant's truck approaching on the intersecting street, where there was no southbound traffic to divert his attention after he first saw the truck and he neither stopped nor accelerated his speed so as to keep out of the path of the truck on cinder-covered pavement.

Appeal from Wayne; Webster (Clyde I.), J. Submitted June 16, 1954. (Docket No. 62, Calendar No. 45,720.) Decided September 8, 1954.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur, Automobiles § 431.
[1] Rights and duties at intersection of arterial (or other favored) highway and nonfavored highway. 81 ALR 185.

Case by Verlin Derby against Thomas H. Hayes, doing business as Hayes Furnace Company, and Frank S. Wierciak, for damages sustained in collision between motorcycle and truck. Directed verdict and judgment for defendants. Plaintiff appeals. Affirmed.

*Markle, Markle & Eubank,* for plaintiff.

*Alexander, Cholette, Buchanan, Perkins & Conklin* (*G. Cameron Buchanan,* of counsel), for defendants.

REID, J. Plaintiff's suit is for injuries to his person and damages to his motorcycle caused by collision at an intersection in the city of Wyandotte with a truck owned by defendant Hayes and driven by defendant Wierciak. The case was tried before a jury. At the close of plaintiff's case, defendant moved for a directed verdict. The trial court granted defendant's motion on the ground that plaintiff was guilty of contributory negligence as a matter of law.

Plaintiff testified in part as follows:

"I just completed work for the day and was riding east on Cedar. There are cinders in between Sixteenth and Seventeenth. That is above [about *sic?*] 5 or 6 blocks from my brother's house. I am generally familiar with that part of Wyandotte. Weather that afternoon was bright and the sun was shining. It was a clear day.

"As I approached the intersection of Seventeenth and Cedar streets, I was riding about 15 m.p.h. in the cinder road and I came up to the intersection then I slowed up. I looked to the left and didn't see nothing. I looked to the right and I saw this other driver. I looked to the left and I was leaving the cinders going on the pavement or before that I mean. There are houses on all 4 corners of that intersection. When you look to the left there was nothing obstructing my view of Seventeenth street to the left or to the

north. Everything was clear. There wasn't anything coming on Seventeenth street from the north which is to the left. After that, naturally, I looked to the right. For as near as I can remember, I was moving all the time. I didn't make a full stop before entering the intersection. * * * I slowed up to approximately, I would say, about 10 m.p.h. from 15. I looked to the right just as I was leaving the cinders going into the intersection. At that place I was going about 10 m.p.h. I don't know how quickly I could have stopped my motorcycle if I had decided to stop. I don't know how long it would take me to stop. I have never stopped that quick. I have stopped the motorcycle. You can stop in slow you can stop it in medium, you can stop it in fast.

"*Q.* Well, when you looked to your right, what did you see, if anything?

"*A.* Well, I saw a truck, he was down here in front of this second house. It appeared to me he was going about 25 miles an hour. It looked O.K. for me to cross, so I proceeded out into the road.

"*Q.* Now did you increase your speed as you started across the road?

"*A.* No. I left it about like it was.

"*Q.* Now were there any cars parked near that intersection?

"*A.* Well, there was one car parked in front of this first house. * * *

"After I had gotten to the position where I could look across the back of the parked car, and look at the truck, I don't know where I was. I was moving and he was moving and I had completely crossed the sidewalk at that time. I can't tell whether I had come to the curb yet. The first time I saw this truck, I was leaving the cinders on the pavement. I believe I had started to leave the cinders. As I was coming into the intersection I looked left it was clear. I looks to my right and I sees this truck. It appeared to me like it was going about 25 m.p.h. so I proceeded on into the intersection and this car was parked here at the curb. When I got out here some-

place, I looked down the road and I saw the truck here. It appeared that he was slowing down to let me across. I can't tell you approximately where I was. I was moving and he was moving. * * *

"*The Court:* Have you stopped your motorcycle when you were going 10 miles an hour?

"*A.* Why, yes.

"*The Court:* Well, that is what he is asking you. How far did you go when you stopped? How long did it take you to stop when you were going 10 miles an hour?

"*A.* Oh, about half the length of the motorcycle.

"*Q.* On what kind of surface could you do that?

"*A.* On a pavement.

"*Q.* Could you do that on cinders?

"*A.* I never tried it on cinders.

"*Q.* Do you think it would take you longer to do it on cinders?

"*A.* I imagine so.

"*Q.* About how much longer?

"*A.* Well, if you slide with the cinders, I don't know how far you are going to slide.

"*Q.* Did you make any attempt to stop prior to this accident, that you can remember?

"*A.* No, I just, as I said, I just slowed down, I didn't stop.

"*Q.* Why didn't you try to stop?

"*A.* Because I figured it was safe for me to go across.

"Cross-Examination

"*By Mr. Buchanan:*

"*A.* I had ridden a motorcycle a couple of days before the day of the accident. This was the third time that I was on that particular motorcycle. I had ridden a motorcycle a few times before. I had ridden a motorcycle about 5 times when I was in the army from 1936 to 1939. I could operate this motorcycle all right. I rode it from Wyandotte to Lincoln Park 2 or 3 times. * * * I never tried to stop on cinders at 15 m.p.h. I don't know in what distance I could have stopped at 15 m.p.h. I imagine I was 5 feet

back from the pavement as I started to slow down. The pavement on Seventeenth street enters Cedar street opposite the sidewalk. Then when I was within about 5 feet from that sidewalk line, I started to slow down from 15 to 10 m.p.h. I didn't look at the speedometer but I think I slowed to about 10. Just as I was leaving the cinders I looked to the left. I was coming up to the corner and while I was looking to the left I was going 10 m.p.h. I slowed down and I didn't pick up. I just let her cruise along at that speed. As I entered the intersection I was going about 10. I saw the automobile more than one time. My motorcycle is about 4-1/2 or 5 feet long, the car is about 15 feet long. * * * I hadn't reached the curb line when I looked to the right. When I first saw Mr. Wierciak's car I was not out to the curb yet, but I was moving. I told you that a car length was about 15 feet and that the car was in front of the second house from the corner when I first saw the car. That would make it about 4 car lengths away and I estimated his speed at about 25 m.p.h. and I was going about 10. I had the width of the street and the length of the motorcycle to go to get past him, I guess. I guess the motorcycle is about 5 feet wide and the street is 24 so, I had to go 28-1/2 or 29 feet to get past him. I didn't increase my speed. When I saw him the second time I was out on the pavement. I don't know where. I imagine I had reached the center of the street. I don't know. When I saw him the second time he was about 2 car lengths south of the curb line on the south side of the intersection.

"*Q.* So he moved about 2 car lengths while you moved half the width of the street, is that right?

"*A.* I must have moved farther than the center of the pavement.

"*Q.* Did you get across the center line when you were hit?

"*A.* Yes.

"*Q.* Was all of your motorcycle past the center line when you were hit?

"*A.* That I don't know. * * *

"*Q.* Did you ever say this: 'There was loose gravel in the intersection and I was afraid if I applied the brakes I would slide into the car'?

"*A.* I must have said it.

"*Q.* Why, sure. And that was the truth, wasn't it?

"*A.* It must have been.

"*Q.* Now the truth of it is that there was cinders all over that pavement, wasn't there?

"*A.* Yes.

"*Q.* And you knew if you put your brakes on, you would have lost complete control of your motorcycle?

"*A.* Yes, I guess I would have.

"*Q.* And that was why you went across, wasn't it?

"*A.* I guess so.

"*Q.* And you hoped that the car would slow down and let you go, didn't you?

"*A.* It appeared like it did slow down to let me cross."

Plaintiff after first observing the position of defendant's truck, did not increase his speed to get past the path of oncoming truck nor stop to keep out of its path. Plaintiff after seeing defendant's truck 4 car lengths away when plaintiff was at the edge of the pavement, did not again observe the truck until the truck was within 2 car lengths of him and too late for plaintiff to accelerate to get out of or to stop to keep out of the path of the truck.

Plaintiff after first observing the position of defendant's truck, was guilty of contributory negligence as a matter of law for failing to make and continue periodic observations of the location and speed of defendant's truck approaching on the intersecting street. See *Herceg* v. *Wideman,* 290 Mich 52, 55; *Francis* v. *Rumsey,* 303 Mich 526, 533; *Kowalski* v. *Malone,* 326 Mich 254, 260. There can be no doubt of plaintiff's negligence in not making intervening observations of the approach of defendant's truck, because he swears to it himself. He also swears there was no threatening danger on his left or in front

of him to divert his attention and he gives no reason for his failure to make intervening observations of defendant's truck. Plaintiff was plainly guilty of contributory negligence as a matter of law.

The judgment appealed from is affirmed. Costs to defendants.

Butzel, C. J., and Carr, Bushnell, Sharpe, Boyles, Dethmers, and Kelly, JJ., concurred.